STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Clay WALKER et al., Appellees.

No. 16090.

Court of Civil Appeals of Texas.

Fort Worth.

March 25, 1960.

Rehearing Denied April 22, 1960.

Leachman, Gardere, Akin & Porter, and Gordon H. Rowe, Jr., Dallas, for appellant.

Mike E. Powell and Max E. Clark, Fort Worth, for appellee Clay Walker.

Crowley, Wright, Miller & Garrett and George A. Crowley, Fort Worth, for appellee International Service Ins. Co.

MASSEY, Chief Justice.

This case involves and is to be resolved through the construction of one of the "standard forms" of insurance policies promulgated by the Board of Insurance Commissioners of Texas pursuant to provisions of law.

Trial in the lower court was upon the law only, and was a hearing of motions for summary judgment, pursuant to which summary judgment was entered for one movant and in denial of the motion of another. This proceeding followed antecedent transactions, including litigation, as result of which all matters relative to damages were resolved, and the damages sustained with which we are concerned became liquidated damages, the primary liability for the payment thereof being established as a matter of law.

Briefly, the facts by which primary liability has been established are as follows: Under and by virtue of contract, a Miss Viola or Vicki Lafoon roomed and boarded with the Forrest family. She was not a relative. A thirteen year old boy, hereinafter termed young Forrest, was a member of this family. Miss Lafoon owned an automobile which she kept at the Forrest home, and by a policy issued by the International Service Insurance Company this automobile was covered for liability (including property damage) and $50 deductible collision. The Forrest family owned and kept another automobile, and by a policy issued by the State Farm Mutual Automobile Insurance Company, said automobile was covered for liability. Both insurance policies were what is known as the "Family Automobile Policy", a "standard form" Texas policy. Without the knowledge or consent of anyone, young Forrest secured the keys to the Lafoon automobile during Miss Lafoon's absence and used it in a "joy ride" around the neighborhood. During the course of this "joy ride" young Forrest negligently caused and permitted the Lafoon automobile to come into collision with a parked automobile belonging to Clay Walker. Damage was done to both vehicles, and legal damages were sustained by the owners of both vehicles. As previously noted, the liability of young Forrest is established. The amount which he has become legally obligated to pay to Mr. Walker is fixed and certain. The same is true as to the amount he is legally obligated to pay to Miss Lafoon. By subrogation and/or assignment from Miss Lafoon, the International Service Insurance Company has become the legal and equitable owner of her rights against young Forrest, but we believe that the situation may be more readily kept in mind if we generally disregard the fact that there has been such a transfer, and view the claim as though it were still Miss Lafoon's.

The construction necessary is of those parts of the "standard form" Family Automobile Policy, denominated "Part I—Liability" and "Part III—Physical Damage", pertinent to the determination of whether one only or both the aforementioned policies afford coverage as applied to Walker's damages, and, if by only one of such policies, which it is. Further, whether either or both of the policies afford coverage as applied to Miss Lafoon's damages, and if so the supplementary questions which come into existence in the event coverage is afforded.

Most material in the construction is the determination of language of the "standard form" defining an "insured" for purposes of "Liability" coverage and for purposes of "Physical Damage" coverage, in instances, (1) where an automobile identified and described by the policy is involved in collision resulting in damage to third parties, (2) where an automobile not described or identified in the policy (a non-owned automobile) is involved in collision resulting in damage to third parties, and (3) in like instances as to non-owned automobiles as applied to "Physical Damage" occasioned thereto as incident to such collision resulting in damage to third parties.

Pertinent provisions of the "standard form" with which we are concerned, under "Part I—Liability", read as follows:

"Persons Insured. The following are insureds under Part I:

"(a) With respect to the owned automobile,

"(1) the named insured and *any resident of the same household,* (emphasis supplied).

"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

"(b) With respect to a non-owned automobile,

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative;

"\* \* \* \* \* \*

"Other Insurance. If the insured has other insurance against the loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Pertinent provisions of the "standard form" with which we are concerned, under "Part III—Physical Damage", read as follows:

"Coverage E—Collision—To pay for loss caused by collision to the owned automobile *or to a non-owned automobile* but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto.

"\* \* \* \* \* \*

" 'insured' means the named insured and (a) with respect to the owned automobile, any person or organization maintaining, using or having custody of said automobile with the permission of the named insured; (b) any relative (meaning relative of the named insured who is a resident of the same household), with respect to a non-owned automobile not regularly furnished for his use;

" 'non-owned automobile' means a private passenger automobile or trailer not owned by the named insured or any relative (meaning relative of the named insured who is a resident of the same household), other than a temporary substitute automobile, while said automobile or trailer is in the possession or custody of the insured or is being operated by him;

"\* \* \* \* \* \*

"Other Insurance—If the insured has other insurance against a loss covered by Part III of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile *shall be excess insurance over any other valid and collectible insurance.*" (Emphases supplied.)

We will first confine ourselves to the construction requisite to determination of insurance coverage as applied to Clay Walker's damages, sustained when young Forrest ran the Lafoon automobile into and against the Walker automobile. In examining the "standard form" Family Automobile Policy, no part thereof other than "Part I—Liability" is necessary of consideration in this determination. It may readily be observed that the Forrest policy afforded liability protection to young Forrest in his negligent operation of the Lafoon automobile, despite the circumstances under which he happened to be operating the same. This is so because with respect to the non-owned automobile belonging to Miss Lafoon young Forrest was a "relative" of the named insured in the Forrest policy. The policy was that issued by the State Farm Mutual Automobile Insurance Company.

However State Farm contends that its policy (which named Mrs. Forrest as the insured and described her automobile as the automobile owned) would be "excess" insurance under the provisions of the "Other Insurance" clause of "Part I—Liability", because primary "valid and collectible" liability coverage was afforded by International in the Lafoon policy, which described the automobile owned, and provided that an operator thereof would have liability coverage under its policy while it was used by "any resident of the same household" as its named insured, Miss Lafoon. Alternatively, it is contended that if the coverage of the State Farm policy (the Forrest policy) should not be considered as "excess", then the provisions regarding "proportion" in the "Other Insurance" clause would have

application and both companies should pay the whole of Mr. Walker's damages through a contribution by each in its proper proportion.

Basis for State Farm's contentions in either event lies in the provision that as to an "owned automobile", specifically Miss Lafoon's, her policy contract with International provided that "any resident of the same household" as Miss Lafoon was an "insured".

There is ambiguity which must be resolved. In a policy contract of some analogy, this Court reached the conclusion that similar use of the term "household" connoted a "family", or group of persons who habitually reside under one roof and form one domestic circle. Travelers Indemnity Co. v. American Indemnity Co., Tex.Civ.App. Fort Worth, 1958, 315 S.W.2d 677, and cases cited. We know of no specific case where the term "resident", as applied to the phrase "resident of a household" has been construed in any contract, regulation or statute, particularly as incident to any insurance matter. As may be noted from the many cases defining "resident" in 37 Words and Phrases, such term means one thing for some purposes and a different thing for others, though usually denominative of citizenship, etc., as of a State, county, municipality, or other governmental subdivision. In the use by which the term is made in any "standard form" policy of insurance, its importance lies in the result designed to be accomplished by its use.

■ Action taken from time to time by the Insurance Commission in amending or revising the various "standard forms" prescribed by it in obedience to and under authority of V.A.T.S. Insurance Code, Art. 5.06, "Policy Forms and Endorsements", is intended to be remedial in character, and in the ordinary instance seeks to accomplish some result by each revision or change in a "standard form". It is contended that since the Lafoon policy is a "standard form" prescribed by the Insurance Commission, the old rule (to the effect that construction will be against the company and liberally in favor of the policy holder, or in supplying insurance benefits) has become obsolete, and should not be applied. Such new theory is quoted from language in Appleman, Insurance Law and Practice, Vol. 13, p. 111, sec. 7407. The case of Glens Falls Ins. Co. v. McCown, 1951, 149 Tex. 587, 236 S.W.2d 108, is cited by counsel along with the claim that its holding is in accord with the language quoted from Appleman. We are of the opinion that there is some question as to whether the holding of the case is subject to this interpretation.

■ However, that need not be decided by us, for under general rules of construction it is said that there should be a fair and reasonable construction of the language of a policy, rather than a strained, unnatural or technical interpretation, and the interpretation should not necessarily be literal. 24–B Tex.Jur., p. 95, "Insurance", sec. 28, "—Rules of Reasonable Construction." We have already mentioned previous construction of the term "household" in a case of some analogy here. A rather unreasonable and ridiculous result would flow from any attempt to ascribe to the term "household" in the phrase under consideration the meaning of a building or structure, or to ascribe to the term "resident" a meaning which would embrace any and all persons who sleep within and take meals at such structure. To do so would mean that any thief who might reside in the same hotel as an automobile owner would become insured by the owner's policy if he stole the automobile and unlawfully converted it to his own use. One may visualize other circumstances possible to be hypothesized which present as unreasonable a result as that mentioned.

■ We believe that the term "household" should receive the construction we gave it in the case of Travelers Indemnity Co. v. American Indemnity Co., supra [315 S.W.2d 680], and that the term "resident" should be construed to mean "member", or

"member of the same family". As applied to a "family", a person is either a member of it or is not a member of it, for it is a personal relationship. It would not be possible to be a "resident" of a family. It is possible to reside in or be a "resident" "in a house", but not "of a house". One may be a "member" of a family or organization or group, but not of a building or of anything inanimate.

 As applied to Miss Lafoon, the question is, therefore, whether she was a member of the Forrest family at the time young Forrest took her automobile and wrecked it and the Walker automobile. Of course, circumstances might be hypothesized which would make the question one of fact for determination by a jury, or other finder of fact. All parties to the appeal seemingly concede that there is no question of fact and that under the undisputed facts the question is one of law only. We concur. From our discussion, it follows that as of the time of the occurrence Miss Lafoon was not a "member of the same family" as that of young Forrest, and, as applied to the phrase of the policy, was not a "resident of the same household" as that individual. Young Forrest was therefore not an "insured" under the Lafoon policy, and the only policy under which liability insurance was afforded in respect to the damages sustained by Mr. Walker was the Forrest policy, issued by State Farm. This was the conclusion of the trial court and judgment entered properly established liability for the payment of Mr. Walker's damages upon the State Farm Mutual Automobile Insurance Company.

Construction as above conforms to analysis to be found in the Insurance Law Journal, April 1957, No. 411, p. 199, entitled "Standard Family Automobile Policy", by Norman E. Risjord and June M. Austin.

 In view of conclusions aforesaid, the second question is reached. That question is whether State Farm is also liable, under "Part I—Liability", for the damages done to Miss Lafoon's automobile. As pre-

viously noticed, young Forrest is liable for these damages and such is established by a judgment. It is evident that he cannot pay such damages, at least at this time, and they will not be paid (as damages) unless State Farm is obligated to make such payment under and by reason of provisions of the same policy of insurance which we have held applicable to Mr. Walker's damages.

The trial court was of the opinion that such damages were covered by the policy, in that the State Farm was obliged to pay off and extinguish the liability of its insured, young Forrest. Judgment was entered accordingly. We do not agree, and are of the opinion that the judgment, as entered in this respect, should be reversed.

The objectives of liability insurance and physical damage insurance (including collision) are readily distinguishable and the protection afforded by either form of coverage is wholly unrelated to the other.

It is to be noted from the language quoted by us out of "Part III—Physical Damage" that young Forrest could not have been an "insured" under the Lafoon coverage of "$50.00 Deductible Collision" insurance, for it was Miss Lafoon's "owned automobile" which was damaged. Young Forrest could not have been an "insured" under the Forrest policy—as applied to collision damage done to the non-owned Lafoon automobile—because no collision insurance was afforded by such policy. Even had the Forrest policy afforded "$50.00 Deductible Collision" insurance, *making young Forrest an "insured"* (as a relative residing with his mother, the "named insured") *under "Part III—Physical Damage" as applied to the non-owned Lafoon automobile, and furthermore making such automobile an insured vehicle under said "Physical Damage" section,* the insurer under such policy would nevertheless not have been obligated thereunder. Such would be the case because under the "Other Insurance" clause such coverage would have been "excess insurance". It has been already no-

ticed that the primary insurance afforded to Miss Lafoon under her own policy with International was for "$50.00 Deductible Collision", and it was valid and collectible.

There is substantial authority for refusing to ascribe any coverage of the damage done to the Lafoon automobile under "Part I—Liability" of the Forrest policy. In the case of Glens Falls Ins. Co. v. McCown, supra, our Supreme Court had a case before it which posed a question analogous to that presented here. We have indicated that in the instant situation the coverage of the Forrest policy could have been broadened by payment of additional premium so that an available protective element would have been thereunder afforded, i. e., collision insurance on non-owned automobiles (as well as the owned automobile) while being driven by a relative who resided in the same household as Mrs. Forrest, albeit such would be "excess insurance" as applied to such of said automobiles as were covered by other valid and collectible collision insurance. The purchaser of the policy chose not to pay the premium. In the circumstances considered in the Glens Falls case, the purchaser of a "standard form" policy acted in like manner. There, as here, a loss was sustained under circumstances which would have been covered had the policy which was secured been broadened by the payment of additional premium, and the contention was made that since under the long established rules of construction insurance contracts should be construed liberally in favor of the insured and so as to afford coverage, the judgment should decree liability since there existed language (under certain clauses of the policy which had become effective as the result of premium payments made), susceptible of a construction that coverage existed. The Supreme Court held that where the "standard form" fully disclosed all the coverages offered, it was proper to consider those rejected along with those accepted in determining the respective obligations and rights of the parties. It then proceeded

to apply the rule to the circumstances of the case and held that "Since respondent did not accept and pay for Coverage F, he 'expressly failed to cover the very damage sued for' and cannot recover." [149 Tex. 587, 236 S.W.2d 111.] Coverage F, of the policy under consideration by the Supreme Court, would unquestionably have covered the loss sustained, and it would only have been by application of the "rule of construction" hereinabove mentioned that liability under other clauses of the policy could be said to have covered the loss sustained.

Applying the reasoning of the Supreme Court to the circumstances of the instant case, we believe that we could only hold that since the purchaser of the Forrest policy did not accept and pay for collision insurance she "expressly failed to cover the very damage sued for" and cannot recover. The rights involved in the litigation between the parties are all derivative of and from such rights under the Forrest policy as was held by an "insured" contemplated to be covered. Since young Forrest had no rights under the policy (as applied to the Lafoon damage), neither did Miss Lafoon, nor the Insurance Company succeeding to such rights, if any, Miss Lafoon ever held.

It might be noted that we are convinced that neither the Commission nor any insurance company ever contemplated that damage such as that suffered by Miss Lafoon would ever be payable under liability insurance carried by the person driving the automobile at the time it was damaged. This character of loss has always been considered to be covered under the coverage known as collision insurance.

Judgment in favor of Clay Walker against State Farm Mutual Automobile Insurance Company is affirmed. Judgment in favor of International Service Insurance Company (on action subrogated and assigned from Miss Lafoon) and against State Farm Mutual Automobile Insurance Company is reversed and rendered.