**James W. SPARKS, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 825.**

United States District Court
W. D. Virginia,
Abingdon Division.

Aug. 25, 1961.

Carl E. McAfee, of Cline & McAfee, Norton, Va., for plaintiff.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, Judge.

This action was brought to review a decision of a Hearing Examiner of the Department of Health, Education and Welfare holding that the plaintiff, James W. Sparks, was not entitled to the establishment of a period of disability under § 216(i) of the Social Security Act, as amended, (U.S.C.A. Title 42, § 416(i)) *nor to disability insurance benefits under* § 223 of said Act. (U.S.C.A. Title 42, § 423.) The Appeals Council of the Social Security Administration having denied a

review of the Examiner's holding that holding became a final decision of the Secretary of Health, Education and Welfare (hereinafter called the Secretary) and therefore reviewable by action in this court under § 205(g) of said Act (U.S.C.A. Title 42, § 405(g)).

On March 24, 1959 the plaintiff filed an application to establish a period of disability and an application for disability insurance benefits, alleging that he first became unable to engage in substantial work on August 20, 1958. The applications were disallowed by the Bureau of Old-Age and Survivors Insurance of the Social Security Administration on August 20, 1958. Plaintiff requested reconsideration on November 24, 1959 and on April 2, 1960 the Bureau reaffirmed its original decision. Plaintiff then filed a request for a hearing and a hearing was held at Norton, Virginia before a Hearing Examiner on April 2, 1960. Evidence was taken and the Examiner found that the plaintiff was not entitled to the establishment of a period of disability or to disability benefits and, as above noted, this finding has now become a final decision of the Secretary.

Section 205(g) of the Act (U.S.C.A., Title 42, § 405(g)) provides that in such a proceeding as this the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." And the definitions of "disability" in § 216(i) of the Act, applicable to the establishment of a period of disability, and in § 223(c), applicable to disability insurance benefits, are identical as applied to the facts of this case, namely, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Section 216(i) adds blindness, as there defined, as an additional definition of "disability" for the purposes of that section but blindness is not involved in this case.

The issue to be decided here, then, is whether there is substantial evidence to support the Secretary's conclusion that the plaintiff was not, at the time he filed his application on March 24, 1959, unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration.

In plaintiff's application for disability insurance benefits and also for the establishment of a period of disability, he stated that the nature of his impairment was "Heart Condition & Rheumatism T & P" and he further stated as to the effect of the impairment "too weak, short of breath—soreness in legs and arms."

There are a number of medical reports in the file. The first is a report of Dr. E. P. Cox of Norton, Virginia, dated January 27, 1959. This report is criticized in the brief of the United States Attorney as being "singularly defective in objective medical findings from which the extent of plaintiff's impairment could be determined." It does, however, state under "Diagnosis": "Rheumatism in arms and legs, Chronic bronchitis, Heart." The failure to explain what is meant by the single word "Heart" is particularly criticized in the brief of the United States Attorney. However, Dr. Cox does conclude: "Due to age, felt that he will ever be able to do any thing but very light work, due to his rheumatism, and heart condition, also chest condition." (The plaintiff was 59 at the time this report was made and is now nearly 61.)

I recognize the rule that medical witnesses should not be permitted to state their conclusions on the ultimate issue to be decided, i. e., whether or not the plaintiff is disabled within the meaning of the Social Security Act. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Kohrs v. Flemming, 8 Cir., 272 F.2d 731; Dean v. Flemming, D.C., 180 F.Supp. 553. Nevertheless the foregoing conclusion of Dr. Cox and the similar conclusions reached by certain other doctors in this case and hereinafter quoted do not seem to go to the ultimate conclusion to be reached in the case but merely to the effect of certain conditions found

by them upon the ability of the plaintiff to do certain types of work.

After the application was made, the plaintiff was evidently referred to Dr. John C. Buchanan of the Miners Memorial Hospital for examination and Dr. Buchanan's report is much more detailed than that of Dr. Cox. The conclusions of Dr. Buchanan, so far as expressed at all in the report, are as follows:

"Clinical Impressions:

1) Latent Diabetes Mellitus, requiring no treatment.
2) Dental caries, marked.
3) Pulmonary emphysema and fibrosis, mild.
4) Right bundle branch block (AHA classification of heart disease IA)
5) Osteoarthritis, General.
6) Hypertrophy of prostate, mild, benign.
7) Varicose veins, lower legs, minimal."

Unlike Dr. Cox, Dr. Buchanan does not express any opinion as to the effect the conditions that he found might have on the plaintiff's ability to engage in substantial gainful employment, and he nowhere states what the effect or any of all of his findings (called "Clinical Impressions") might be on the plaintiff's ability to work.

The brief of the United States Attorney undertakes to supply this lack in certain respects by advising the court, *inter alia*, that the heart condition referred to in Dr. Buchanan's summary of "Clinical Impressions" imposes "no limitations on a patient's activity and requires no treatment." However, this statement in the brief and similar statements in the opinion of the Hearing Examiner do not constitute evidence and the Court cannot take judicial notice of medical matters that are not common knowledge.

"Judicial notice will be taken of generally known medical and other scientific facts relating to human life, health, and faculties. For example, among other things, judicial notice may be taken of well-known facts relating to the anatomy and physiology of man; of the diseases to which men are subject, and in a general way of the causes or sources of such diseases, and the remedies or cures therefor; of well-known facts relating to emotional or mental disturbances; of the nature and effect of injuries, diseases, and physical defects; of the character of particular diseases as being material to insurance risk; of the effects of the use of intoxicating liquors; and of facts relating to dangerous situations, accidents, and accidental injuries. On the other hand, judicial notice will not be taken of facts relating to human life, health, and faculties which are not matters of common knowledge, which facts must be shown by expert witnesses." 31 C.J.S. Evidence § 79, pp. 662–666.

The Buchanan report, accompanied by an X-ray by Dr. D. B. Jones, was submitted to the Virginia Vocational Rehabilitation Agency and was evaluated by Linda W. Bock, Disability Determiner, and Allen W. Lane, Medical Consultant, who found that "A period of disability is not established." A later similar evaluation under date of March 28, 1960 also found that the plaintiff "was not under a disability."

These results are merely conclusions as to the ultimate question for decision arrived at by the determiner and the medical consultant, doubtless on the basis of the latter's expert medical knowledge. As such they fall squarely within the prohibition of the use of such conclusions above referred to. United States v. Spaulding, supra. And they are of no help to the court in determining the extent, if at all, the plaintiff's ability to work has been affected by the physical conditions found in the medical reports.

Another medical report of Dr. Cox under date of May 9, 1960 gives somewhat greater medical detail than his first report and contains under the item "Progress" the statement "Completely disabled

for and kind of work that is qualified to do." And under "Remarks" the following: "I think that this man is totally disabled for any gainful occupation that he is qualified to fill, and due to age and education that is not suitable for training, and no improvement could be expected to improve his condition sufficiently to qualify him for gainful employment."

Still another report was made under date of July 18, 1961 by Dr. A. H. Bond which contains under "Progress" the following:

"* * * b) Patient can be improved by treatment, but it is doubtful that he can obtain or maintain gainful employment. Patient cannot continue in his general occupation of labor and maintanence work. c) Patient cannot stand heavy lifting, hill climbing, protracted exertion."

And Dr. Bond says under "Remarks:"

"This gentleman is 60 years of age, has been unemployed by reason generalized arthritis since 1958. He has been further disabled by severe bronchitis for the past six months, has a bilateral parkinson-type tremor and also needs glasses and teeth repair. He is unable to obtain and maintain gainful employment, particularly in the field to which he was accustomed."

Finally the Appeals Council received additional evidence in the form of a report from Dr. Lewis K. Ingram of Norton which is best summarized in his covering letter as follows:

"He is unable to obtain employment locally due to his present physical findings. It might be possible physically for him to do other work than is available locally, however my impression of his adaptability is rather low so that training him to do other forms of work would not be rewarding and would actually probably be impossible. As a result for all intense and purposes, he is unable to do any work and is therefore disable."

In the hearing before the Hearing Examiner, the plaintiff testified that in school he "never got any more than the third grade" and that he "couldn't read much of anything." He has worked all his life at heavy labor at saw mills and coke yards and for the construction of telephone lines and pipe lines through the mountains, mostly clearing brush and trees from the rights of way. He testified that he had arthritis in his right shoulder and couldn't use it, that he was short of breath and his legs hurt and that he got cramps in the muscle of his leg when he stood for any considerable period of time. He did testify he had tried to do a little hunting the previous fall but not going anywhere except on the edge of town. His testimony was generally confirmed by that of his wife, his daughter and his son-in-law.

Unless Dr. Buchanan's unexplained findings and the evaluation reports above mentioned can be determined to be evidence to the contrary, the evidence of the doctors is unanimous to the effect that the plaintiff cannot do the type of work which he has done in the past nor any other work that is available in the vicinity.

The brief for the Secretary practically concedes that the evidence establishes the fact that the plaintiff cannot do the type of work in which he was engaged throughout his working career. It states:

"It appears from a review of the evidence that the plaintiff's impairments would restrict his activities to a limited extent and might prevent him from doing work involving much walking or strenuous physical exertion. However, it is equally obvious from the objective medical findings that such limitations placed upon the plaintiff would not be sufficient to prevent him from engaging in work as an assembler or bench work, elevator operator, tool crib attendant, or other types of light or sedentary employment within his capabilities."

There is no evidence to indicate that the plaintiff could in fact perform such tasks. And in view of the plaintiff's very limited education, the fact that he can hardly be said to be able even to read and that, as described by one of the doctors, "his adaptibility is rather low," it must be concluded that it is more than doubtful if he could.

As said by Judge Wyzanski in Parfenuk v. Flemming, D.C., 182 F.Supp. 532, at page 535:

"When, as in the case at bar, a claimant proves that he has reached the age of 64, that he has had only 5 years of schooling, that his comprehension of English is limited, that the only American jobs he has ever held are as wood chopper, shoveler, and upholsterer, and that he has a physical impairment of his right hand which incapacitates him to perform any of those tasks, then he has proved that he is disabled.

"The defendant suggests that the claimant physically is capable of being a guard or some kind of salesman. No evidence supports this suggestion. Cf. Klimaszewski v. Flemming, D.C.E.D.Pa., 176 F.Supp. 927, 932. Moreover, even if it were true that the claimant could meet the physical and language requirements of such an occupation, there is no evidence that without relevant prior experience a man of claimant's age, over 64 years, could procure such a job.

"As I said last May in Scales v. Flemming [D.C., 183 F.Supp. 710], under the Social Security Act, unlike the situation under some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment and of his age, experience, and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and of his lack of particular experience and particular education for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the Secretary's burden to go forward to offer evidence of those types of work."

And to much the same effect Judge Biggs said in Klimaszewski v. Flemming, D.C., 176 F.Supp. 927, at page 932:

" * * * Of course, it may be conceded that with the use of great imagination and even greater ingenuity, conceivably a paying job might be found for Klimaszewski. The court, however, can presently perceive none and the Social Security Administration has not suggested any work for Klimaszewski except as a night watchman, or as stated in the Administration's brief, 'bench work' or some other 'employment in a light manufacturing plant.'

"Except for employment as a night watchman, which we think is not reasonably available in view of the claimant's limited ability to get about, the suggested lines of employment are cast in general terms. There is no demonstration by way of evidence or argument that this claimant is qualified for any specific employment. The claimant's proof that he is not qualified to engage in any substantial gainful activity is not adequately countered by the Administration's suggestions of possible employment.

"The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

See also Pruitt v. Flemming, D.C., 182 F.Supp. 159, and Roop v. Flemming, D.C., 190 F.Supp. 820.

The Court therefore finds that there is no substantial evidence in the record to support the finding of the Secretary to the effect that the plaintiff is not disabled from engaging in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. It follows therefore that the decision of the Secretary should be reversed and that the plaintiff be granted a period of disability from the date he was called back to work and found himself unable to work, October 20, 1958, and such disability insurance benefits as he would have been entitled to had his initial application been approved.

An order will be accordingly entered.