## CIRCUIT COURT OF THE CITY OF RICHMOND

Roy Hooker, Jr.

v.

State Farm Mutual Ins. Co.

February 7, 1989

Case No. LL-1384-W

By JUDGE T. J. MARKOW

At issue in this action is the meaning of a phrase appearing in the medical payments provision of an automobile liability insurance policy issued to plaintiff by defendant.

Specifically, was a motor vehicle owned by plaintiff's employer and driven by plaintiff for the employer's business purposes at the time of the accident "furnished for the regular use of" the plaintiff so as to constitute a "non-owned vehicle" under the policy? If the car was "furnished for the regular use of" the plaintiff, plaintiff is not entitled to recover anything from defendant. If the vehicle was not "furnished for the regular use of" the plaintiff, defendant must pay plaintiff benefits covered under the medical payments provision of the policy.

The parties have entered into written stipulations of fact and have represented to the court that there are no material facts genuinely in dispute. Each has filed cross motions for summary judgment. The court has reviewed the stipulations and has considered the arguments of counsel and agrees that summary judgment is appropriate. For the reasons which follow, summary judgment will be entered in favor of the plaintiff.

Roy Hooker, a police officer for the City of Richmond, was injured in an automobile collision on January 6, 1986, while performing his duties in a police cruiser. At the

time of the collision, Hooker had a valid contract of family automobile insurance which included medical payments coverage with defendant, State Farm Mutual. Plaintiff submitted medical bills for payment, but State Farm denied responsibility on the basis that the vehicle Hooker was operating at the time of the accident did not qualify for coverage under the policy, as it was furnished for his regular use.

The parties have stipulated that the City of Richmond does not allow police officers to use their police vehicles for personal use and that Officer Hooker did not ever drive his police vehicle for any reason other than official police business. At the time of the accident, the plaintiff was operating a 1983 Chevrolet police cruiser, designated Unit 513, which was owned by the City of Richmond and which Officer Hooker used daily without obtaining permission to do so. Officer Hooker had a State Farm family automobile policy which, in relevant portion, provided:

> Coverage C - Medical Payments.
> To pay all reasonable expenses incurred within one year from the date of accident for necessary medical . . . services;
> Division 1 - To or for the named insured . . . who sustains bodily injury . . . caused by accident,
> a) while occupying the owned automobile
> b) while occupying a non-owned automobile . . . or
> c) through being struck by an automobile
> . . . .

Subparagraph (c) was amended prior to the collision in this case to read "(c) while not occupying a motor vehicle, through being struck by an automobile . . . ."

Roy Hooker is entitled to medical payments coverage arising from the collision of January 6, 1986, on either of two independent grounds. First, Roy Hooker was operating a "non-owned automobile" according to the terms of subparagraph (b). Second, the added language of subparagraph (c) is inconsistent with Virginia statutory law. Removing the inconsistent language provides coverage for Roy Hooker

under subparagraph (c), as he was "struck by a motor vehicle."

The parties agree that Roy Hooker is entitled to recover $11,466.25 if the City of Richmond police cruiser he was operating at the time of the collision was a "non-owned automobile" according to the terms of the State Farm policy. "Non-owned automobile" is defined in the policy as meaning, in relevant part, "an automobile . . . . not owned by or *furnished for the regular use of . . . the named insured* . . ." (Stipulations, Exhibit A, p. 6) (emphasis supplied). It is stipulated the police vehicle was owned by the City of Richmond, not by Roy Hooker. Therefore, the issue before the court under subparagraph (b) is whether the police vehicle was "furnished for the regular use of" Roy Hooker. State Farm argues that because the same car was assigned to Hooker each day to be operated on his shirt solely by him that the auto was furnished for his regular use.

In *State Farm Mutual Automobile Ins. Co. v. Smith*, 206 Va. 280 (1965), the Supreme Court of Virginia considered the meaning of the phrase "furnished to the named insured . . . for regular use" in a context similar to the one involved here. In *Smith*, a sailor on sea duty left his car at home. Because his wife could not drive, he gave his sister-in-law permission to use the car "whenever it was needed." 206 Va. at 283. The sister-in-law drove the car on approximately ten occasions, two or three of which were for her own purposes and the others being for the wife's benefit. The sister-in-law never used the car without first asking the wife's permission, nor did she ever drive the vehicle while the husband-owner was home. *Id.* at 287. Based on these facts, the court held that the car was not furnished for the regular use of the owner's sister-in-law:

> We interpret the language "furnished to the named insured for regular use" *as referring to the furnishing for the insured's own purposes*, and not the furnishing for the owner's or his family's purposes, with incidental permission for use by the insured for her purposes.

206 Va. at 288 (emphasis added).

This holding is controlling here. In the instant case, the parties have stipulated that plaintiff did not have permission to use his employer's vehicle for personal purposes.

In *Smith*, even occasional personal use was considered by the court to be "incidental" and not constituting "furnishing to the named insured for regular use" under the policy. Here there is no evidence of even an occasional personal use. As in *Smith*, Hooker's use of the squad car was not for his own benefit but for the benefit of the owner, the City of Richmond.

There is nothing in the court's opinion in *Smith* to indicate that the phrase "furnished to the named insured for regular use" means "frequent use" or "prolonged" use. Instead, it is the entity for whose benefit the vehicle is provided that controls. Here, although the squad car had been furnished to plaintiff for some six months prior to the accident, averaging fifty to sixty miles per day in mileage, it was never furnished to him for his "own purposes," but solely for the purposes of his employer.

Defendant cites several cases from other jurisdictions to support its position. While those cases do indeed hold as defendant would have the court hold here, this court is bound by the holding of the Supreme Court of Virginia in *Smith, supra*, rather than holdings in cases from other jurisdictions.

Indeed, even one of the cases cited by defendant recognizes that the rule enunciated in *Smith* is different from the rule in other jurisdictions:

> We believe the Supreme Court of South Carolina would not place this [Smith's] construction upon the policy issued to [the named insured].

*Seaboard Fire & Marine Ins. Co. v. Gibbs*, 392 F.2d 793 (4th Cir. 1968).

Finally, defendant relies on *Quesenberry v. Nichols and Eric*, 208 Va. 667 (1968), in an attempt to demonstrate that *Smith* does not apply to employer-employee situations. However, as Judge Johnson aptly observed in *Jones v. State*

*Farm Mutual Automobile Insurance Co.,* ▮ *Quesenberry* was the interpretation of the phrase "not owned by, or furnished for the regular use of the named insured by any government unit or agency . . . ." 208 Va. 668-669. Rather than discussing the "regular use" phrase of that clause, the court devoted the rest of its opinion to an analysis of whether the words "not owned by" referred to an automobile not owned by the named insured or to one not owned by any government unit. The court's opinion contains absolutely no discussion of whether the subject vehicle was "furnished for the regular use of the named insured." To the extent the defendant cites *Quesenberry* to show the insurance company's purpose in including the "regular use" exclusion, the court concludes that the express language of the policy controls.

Moreover, the court concludes that if defendant's purpose in including such language is not being honored by the judiciary, the defendants have ample opportunity to revise it.

Plaintiff also contends that, in addition to coverage under subparagraph (b) "while occupying a non-owned automobile," discussed *supra*, that he is also entitled to coverage under subparagraph (c) of the medical payments provisions in the policy, as the policy language is inconsistent with statutory requirements of Va. Code Ann. § 38.1-21. Some time prior to Roy Hooker's collision on January 6, 1986, State Farm amended subparagraph (c) to state:

> *While not occupying a motor vehicle*, through being struck by an automobile or trailer of any type. (Added language of amendment underlined.)

Without the underlined phrase, plaintiff would be covered as he was "struck by an automobile." Plaintiff argues that Va. Code Ann. § 38.1-343 (Now § 38.2-318 (1976)) mandates the broader coverage and the defendant's attempt at limitation, even though approved by the State Corporation Commission, cannot supersede the statutory requirement. In *Va. Farm Bureau Mutual Ins. Co. v. Jerrell,*

236 Va. 261 (1988), the Supreme Court of Virginia concluded that medical payment provisions of insurance policies may not limit coverage to injuries sustained by an insured "while not occupying a motor vehicle, through being struck by an automobile" without violating § 38.1-21. Because State Farm's policy provision was not in compliance with the statute, the statute prevails and supersedes the conflicting policy provision.

For the foregoing reasons, judgment will be entered in favor of the plaintiff.