GOVERNMENT EMPLOYEES INSURANCE CO., ET AL.

V.

ALLSTATE INSURANCE CO., ET AL.

Record No. 850529

June 10, 1988

Present: All the Justices

*Richard A. Saunders (Donnell P. Davis; Furniss, Davis and Rashkind*, on briefs), for appellants.

*Joseph M. Young (Reynolds, Smith & Winters, P.C.*, on brief), for appellee Allstate Insurance Company.

*John G. Crandley (Preston, Wilson & Crandley,* on brief), for appellee State Farm Mutual Automobile Insurance Company.

No briefs or arguments for appellees James Luther, Teresa L. Nigohossian and Lloyd L. Menscer.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal of a declaratory judgment, we again consider the meaning and application of the term "resident of the same household" as used in an automobile liability insurance policy. Specifically, Government Employees Insurance Company (GEICO),

challenges the trial court's determination that a named insured's spouse who had left the marital home was a resident of the named insured's household.

The declaratory judgment proceeding was brought by Allstate Insurance Company (Allstate) against GEICO and State Farm Mutual Automobile Insurance Company (State Farm),[1] seeking an adjudication of the rights and obligations of the parties with respect to certain automobile liability insurance policies. In a prior action, Lloyd L. Menscer was awarded a judgment of $50,000 against Teresa L. Nighohossian (Teresa) for personal injuries he sustained as a result of Teresa's negligent operation of an automobile owned by James R. Luther (James). Allstate, Menscer's insurance carrier, defended Menscer's personal injury action pursuant to the uninsured motorist clause in the policy Allstate had issued to him.

Allstate contended in the subsequent declaratory judgment proceeding that James' automobile was covered under a policy issued by GEICO to Wilhemina E. Luther (Wilhemina), James' wife. Allstate also contended that Teresa was insured under a policy State Farm had issued to Samson Nighohossian (Samson), Teresa's husband.

In response, GEICO alleged that James was not a resident of the household of its insured, Wilhemina, at the time of the accident and, thus, James was not a "named insured" under the policy that GEICO had issued to Wilhemina. Consequently, GEICO asserted, Teresa could not have been operating the automobile with the permission of a named insured as required by GEICO's policy. Similarly, State Farm claimed that Teresa was not a resident of the household of its named insured, Samson, when the accident occurred and, thus, was not covered under State Farm's policy.

. The trial court decided that James was a resident of Wilhemina's household when the accident occurred and, therefore, qualified as a named insured under GEICO's policy. The court further concluded that James had given Teresa permission to use his automobile. Accordingly, the court held that primary coverage for the accident rested with GEICO. The court also ruled that Teresa was a resident of Samson's household on the date of the accident and, therefore, was a named insured under the State

---

[1] Also named as parties defendant were Wilhemina E. Luther, James R. Luther, Samson Nighohossian, Teresa L. Nighohossian, and Lloyd L. Menscer.

Farm policy. Thus, the court decided that secondary or excess coverage for the accident rested with State Farm.

GEICO and Wilhemina have appealed from the trial court's judgment. The sole question on appeal is whether the court erred in finding that James was a resident of Wilhemina's household when the accident occurred.

The evidence is undisputed. Wilhemina was the only witness to testify at the trial of the present case, although Teresa's deposition was presented. James was present at the trial, but he did not testify.

The accident occurred on July 29, 1981. At that time, a liability insurance policy was in effect that had been issued by GEICO to Wilhemina, who resided on Foxdale Drive in the City of Norfolk. Two automobiles were listed in the policy: James' 1967 AMC Ambassador and a 1972 Chrysler owned by Wilhemina.

Until April 10, 1981, James and Wilhemina resided together in their jointly-owned residence on Foxdale Drive. On that date, however, James left the marital home and never moved back. When he left, he removed virtually all his personal belongings.[2]

James' and Wilhemina's separation was not sudden; marital problems had existed for a number of years. The basic problems were James' "heavy drinking and [his] not coming home after work." On April 10, James again failed to come home after work. Wilhemina, however, "knew where he was so [she] went there and asked him to either come home or don't come home." When James made no response, Wilhemina returned home and packed his belongings. James subsequently moved out of the house, taking his belongings with him. James never objected to his wife's actions.

James returned to the marital home only once between April 10 and the date of the accident. On that occasion, he and Wilhemina dined out with another couple. The occasion ended unpleasantly. While at dinner, Teresa "came over to the table and asked [James] to go outside and talk to her." James did, and when he returned, he immediately took Wilhemina home.

James and Wilhemina never discussed a reconciliation. Their infrequent telephone conversations "weren't usually pleasant."

---

[2] The only items belonging to James that remained in the marital home were a built-in stereo and some plaques stored in a box.

James continued to allow his retirement check of approximately $500 to be deposited into his and Wilhemina's joint checking account until September or October 1981. From that account, Wilhemina paid the mortgage, "big bills [and other joint] expenses that [she] and [her] husband had incurred during [their] marriage." Wilhemina also used the account to maintain the household.

From April 10 to the date of the accident, Wilhemina entertained "some hope," at least "in [her] mind," of a reconciliation with James. After the accident, however, she decided that "the marriage was essentially lost." Wilhemina and James never reconciled after the April 10 separation and subsequently were divorced, based on a continuous, one-year separation from that date.

On July 24, 1981, Teresa took "a few change[s] of clothes, toothbrush, make-up, and enough to survive on" and moved into the house in which James resided. She remained there until "about three, four" days after the accident, at which time she returned to live with Samson. At the time of the accident, a State Farm policy issued to Samson was in effect.

GEICO was not notified that James had moved from the marital home until after the accident. Wilhemina took no steps to remove James' automobile from the GEICO policy until after the accident. She continued to pay GEICO the monthly premiums on her policy through May or June 1981. Wilhemina never demanded a refund of premiums paid to GEICO to insure James' automobile, and GEICO never refunded any premiums to Wilhemina for the period of coverage after April 10, 1981. On July 7, 1981, Wilhemina completed a GEICO questionnaire in which she listed James' automobile as a vehicle to be insured under her policy and indicated that James drove the 1967 AMC Ambassador 100 percent of the time.

Under the terms of GEICO's policy, James' 1967 AMC Ambassador was an "owned automobile" at the time of the accident, because it was "a private passenger . . . automobile described in [the] policy for which a specific premium charge indicates that coverage is afforded." With respect to an "owned automobile," the policy provides that the following persons are insured:

> (1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation . . . is within the scope of such permission . . . .

The policy defines "named insured" to mean "the individual named in [the policy] and also includes his spouse, if a resident of the same household."

■ Under the State Farm policy in effect at the time of the accident, James' car was a "non-owned automobile," because it was "an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." Under the terms of State Farm's policy, "non-owned automobile" coverage is excess over any other valid and collectible insurance, including "owned automobile" coverage.

■ GEICO contends on appeal that James was not covered by the policy it had issued to Wilhemina because he was not a "resident of the same household" of Wilhemina at the time of the accident. We first defined the term "resident of the same household" in *State Farm Mutual* v. *Smith*, 206 Va. 280, 142 S.E.2d 562 (1965), where we said:

The meaning of "resident" or "residence" . . . depends upon the context in which it is used. Here, we must interpret the meaning of "resident", when followed by "of the same household". The word "household", . . . connotes a settled status; a more settled or permanent status is indicated by "resident of the same household" than would be indicated by "resident of the same house or apartment".

*Id.* at 285, 142 S.E.2d at 565-66 (footnotes omitted). In *State Farm*, we also quoted from *Lumbermens Mut. Casualty Co.* v. *Pulsifer*, 41 F.Supp. 249, 251 (D. Me. 1941), as follows:

Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness".

*State Farm*, 206 Va. at 285 n.6, 142 S.E.2d at 565-66 n.6. We recently reaffirmed this definition in *Allstate Insurance Co.* v. *Patterson*, 231 Va. 358, 361-62, 344 S.E.2d 890, 892-93 (1986).

▇ We also considered the term "resident of the same household" in *St. Paul Ins.* v. *Nationwide Ins.*, 209 Va. 18, 161 S.E.2d 694 (1968), a case that is factually similar to the present case. There, Nationwide Mutual Insurance Company had issued an automobile liability insurance policy to Tilden Elkins as the named insured. With respect to a non-owned automobile, the policy covered "any relative" of the "Persons Insured" and defined "relative" as "relative of the Named Insured who is a *resident of the same household.*" *Id.* at 21, 161 S.E.2d at 696-97 (emphasis added).

An automobile operated by Troy Elkins, Tilden's son, was involved in an accident in which a passenger was injured. Although the automobile was purchased by Troy, it was titled in the name of a friend, with whose permission Troy was driving. The passenger sued Troy.

At the time of the accident, Troy was on leave from the Army. When Troy had been inducted into the Army, he was living with his parents. At the time of the accident, however, his parents were separated and later were divorced on the ground of the father's desertion. After Troy was discharged from the Army, he made his home with his mother until he was married.

In *St. Paul*, Nationwide contended that Troy was not covered by the policy it had issued to Troy's father because, at the time of the accident, Troy was not "a resident of the same household" of his father. *Id.* at 22, 161 S.E.2d at 697. We agreed with Nationwide's contention, stating that "the undisputed evidence is that at [the time of the accident] Troy's parents were separated and the former household had been broken up by the father's desertion." *Id.*, 161 S.E.2d at 697-98.

▇ We believe the undisputed evidence in the present case leads to the same conclusion. At the time of the accident, James had not resided in Wilhemina's household for approximately four months. James had removed virtually all his belongings from the marital home and, so far as the record discloses, had returned to the home on only one brief occasion. More important, nothing in the record suggests that James ever intended to reconcile and resume cohabitation with Wilhemina. "[A] person's intent is impor-

tant in determining whether he qualifies as a resident of a particular household." *Patterson*, 231 Va. at 363, 344 S.E.2d at 893.

Based upon the undisputed evidence, the only reasonable inference to be drawn is that James was not a resident of Wilhemina's household at the time of the accident. Because reasonable minds could not differ upon the question, we hold that, as a matter of law, James was not a resident of Wilhemina's household when the accident occurred and, therefore, was not covered by GEICO's policy.

Accordingly, we will reverse the trial court's judgment and enter final judgment for GEICO.

*Reversed and final judgment.*