## ALBERT W. FURROW, ADMINISTRATOR, ETC.

### V.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Record No. 860637

January 13, 1989

Present: Carrico, C.J.,  Compton, Stephenson, Russell, Thomas, and Whiting, JJ., and Gordon, Retired Justice.

*Gordon H. Shapiro (Lutins and Shapiro,* on briefs), for appellant.

*Neil C. Bonney (Robert M. White; White and Selkin,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The sole question for decision in this insurance case is whether there was credible evidence to support the trial court's conclusion that a decedent, at the time of a fatal accident, was not a resident of the household of her mother.

In April 1984, Donna Elizabeth Price, age 22, was severely injured in a single vehicle accident while a passenger in the vehicle operated by Deborah Kay Jackson. Several days later, Price died from the injuries. At the time, the decedent's mother, Georgia H. Dallas, was the named insured in a motor vehicle liability insurance policy containing an uninsured motorists endorsement with underinsured provisions issued by appellee State Farm Mutual Automobile Insurance Company. The endorsement provided cov-

erage to: the named insured "and, while residents of the same household, the spouse and relatives of either."

In April 1985, appellant Albert W. Furrow, as the personal representative of the decedent's estate, filed the present declaratory judgment action against the insurer. The plaintiff asked the court to declare that the decedent was a resident of her mother's household at the time of the accident and that the insurer had an obligation to provide coverage pursuant to the underinsured provisions of the endorsement to satisfy the plaintiff's claim of damages for the alleged wrongful death of his decedent.

By agreement, the trial court considered the issue upon the pleadings; depositions of Furrow, the mother, and one Allen W. Hobbs; and argument of counsel. The court decided in favor of the insurer, and we awarded Furrow this appeal.

According to Code § 8.01-680, the judgment of the trial court shall not be set aside upon review "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Pursuant to settled appellate principles, we shall consider the evidence in the light most favorable to the insurer, which prevailed below. This will demonstrate that the trial court's decision is neither plainly wrong nor without supporting evidence.

In 1978, when the decedent was about 17 years of age, she left her family's home in Ironto near Salem to live in Ironto with Furrow, who was then 18 years old. The couple, who never married, continued to live together during most of the remaining six years of her life. A daughter was born to them in 1980.

During the relationship, the couple lived first with his parents in the parents' home. Later, they lived in a rented house. Finally, they lived in a trailer on his parents' property.

In 1984, the couple's relationship began to deteriorate. About the same time, she met Hobbs, a paroled felon who worked at the same place where she was employed. She and Hobbs began meeting secretly and developed, according to Hobbs, a close, "strictly platonic" relationship.

In April 1984, about nine days before the fatal accident, the decedent left the trailer where she and Furrow lived and, taking the child, went to her mother's home. She never returned to live in the trailer. According to Furrow, he and the decedent had "separated" at least once before, staying apart two or three days. The mother testified that her daughter had spent the night at her

home on four or five separate occasions earlier in 1984. Each time before the last separation, the decedent had returned to live with Furrow. He said that he did not know whether the last separation was to be the final one.

After the last separation, the decedent stayed at her mother's home during the week, spending the weekends with Hobbs at a local motel. The decedent brought only "a few clothes" of her own and "a few of the baby's things" to the mother's home. Some of her clothes and her furniture remained at the trailer. While at the mother's home, the decedent and the child shared a bedroom with the decedent's older sister due to space limitations at the house. According to Hobbs, the decedent's stay at the mother's home "was a temporary arrangement; it wasn't permanent." The mother testified that the decedent did not want "to live nowhere in Ironto"; she just wanted "to get away."

During the period immediately before the accident, Hobbs rented an apartment in Salem where the decedent spent the weekends. They intended to marry, even though Hobbs apparently was married to a woman who had "been gone since 1978." The decedent had brought to the Salem apartment various housewares, including silverware, glasses, plates, pots, bedspreads and shower curtains. According to the mother, the decedent wished to move to an apartment in Salem possibly "because of " a "guy" the mother knew only as "Allen."

The trial court found that "Donna Price was a visitor and sojourner in her mother's home, in transition from Albert Furrow's shared residence to the proposed shared residence of Allen Hobbs." This factual determination finds overwhelming support in the evidence. Stated differently, the plaintiff utterly failed to carry his burden to establish coverage under the terms of the policy endorsement. *See Maryland Casualty Co. v. Cole*, 156 Va. 707, 716, 158 S.E. 873, 876 (1931).

In defining the phrase "resident of the same household," we have said that use of the term "household" connotes a settled status which is more permanent and settled than would be indicated if the phrase were "resident of the same house or apartment." In the present context, the term "household" embraces a collection of persons living together as a single group with one head under one roof, a unit of permanent and domestic character. *Government Employees Ins. v. Allstate Insurance Co.*, 235 Va. 542, 547, 369 S.E.2d 181, 184 (1988); *Allstate Insurance Co. v.*

*Patterson*, 231 Va. 358, 361-62, 344 S.E.2d 890, 892-93 (1986); *State Farm Mutual* v. *Smith*, 206 Va. 280, 285, 142 S.E.2d 562, 565-66 (1965). Furthermore, a person's intent is important in determining whether she qualifies as a resident of a particular household. *Patterson*, 231 Va. at 363, 344 S.E.2d at 893.

■ Manifestly, the evidence shows that the decedent never intended to become a member of the mother's "household." She did not plan to join the permanent, domestic, single group composed, according to the evidence, of her mother, her older sister, her younger brother, and the mother's husband, living at the home in Ironto. Instead, the decedent was in transition from Furrow's residence to Hobbs' residence. One relationship had ended and another had begun. The decedent merely was staying temporarily with her mother while she was making the change. As her mother said, the decedent did not want to live in Ironto; she wanted "to get away."

Furrow argues that the trial court was not entitled to rely on Hobbs' testimony in support of the finding that the decedent intended to establish a residence with him. Labelling Hobbs' testimony "outlandish" and "a grossly embellished description" of his relationship with the decedent, Furrow says the testimony was "incredible" and unworthy of belief. We disagree.

■ The mere fact that a witness is a felon does not make his testimony incredible as a matter of law. A person convicted of a felony is a competent witness, but the fact of conviction may affect his credit. Code § 19.2-269. In the present case, much of Hobbs' testimony was corroborated by other evidence and the trial court was entitled to give it such credit as the court deemed proper and was not required to disregard it entirely.

■ For these reasons, we hold the trial court correctly ruled that the decedent was not a resident of the mother's household at the time of the accident and that the insurer had no obligation to provide coverage to satisfy any claim the plaintiff may have for the wrongful death of his decedent. Therefore, the judgment appealed from will be

*Affirmed.*

GORDON, Retired Justice, concurs in result.