# Anna L. Phelps

### v.

# State Farm Mutual Automobile Insurance Company, et al.

Record No. 920429

January 8, 1993

Present: All the Justices

*R. Louis Harrison, Jr. (Radford, Wandrei & Harrison*, on briefs), for appellant.

*Henry M. Sackett, III (James O. Watts, IV; Edmunds & Williams*, on brief), for appellee State Farm Mutual Automobile Insurance Company.

No briefs or argument for United States Automobile Association and Nationwide Mutual Insurance Company.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This is an appeal from a final order in a declaratory judgment proceeding brought by Anna L. Phelps against State Farm Mutual Automobile Insurance Company. In the order, the trial court held that Anna Phelps was not entitled to coverage under an automobile insurance policy issued by State Farm in which she was the named insured. Finding that the trial court erred, we will reverse.

The dispute arose out of a single-car accident that occurred on June 10, 1989, while Anna Phelps was driving an automobile owned by her sister, Mary Catherine Phelps, and insured by Nationwide Mutual Insurance Company. Anna and her two passengers were injured, and the vehicle was damaged.

Mary Catherine's policy with Nationwide provided only liability coverage, while Anna's policy with State Farm provided both liability and collision coverage. State Farm denied responsibility for the claims resulting from the accident. In her declaratory judgment proceeding, Anna sought to have State Farm declared liable for excess liability coverage with respect to the claims of her passengers as well as for collision coverage concerning the damage to Mary Catherine's car.[1]

The State Farm policy provided Anna with coverage for both "owned" and "non-owned" automobiles. The policy defined a non-owned automobile as one "not owned by or furnished for the regular use of either the named insured or any relative." The policy stated that " 'relative' means a relative of the named insured who is a resident of the same household."

State Farm does not claim that the vehicle operated by Anna at the time of the accident was furnished for her regular use. Rather, State Farm's denial of coverage was based upon the theory that Anna and Mary Catherine were residents of the same household, *viz.*, their mother's household, and, therefore, that the vehicle did not qualify for coverage as a non-owned automobile. The trial court, in a letter opinion, adopted State Farm's theory and thereafter entered the adverse declaratory judgment from which Anna appeals.

The evidence shows that until they went away to college, Anna and Mary Catherine lived at Goode, Bedford County, Virginia, with their widowed mother, Marjorie Hunt Phelps, and two younger sisters. Mrs. Phelps "told [Anna and Mary Catherine that] when [they] turned eighteen [they] were on [their] own." Furthermore, although Mrs. Phelps had a family automobile insurance policy, she did not "invite" Anna and Mary Catherine to "[include their cars] on that policy with [her]" but "told them to both get automobile insurance as soon as they left home."

Mary Catherine left home in the summer of 1987, after she turned eighteen, to attend college at George Mason University in Northern

---

[1] The passengers, Anna Featherstone and Jennifer Trevey, as well as their respective insurance carriers, Government Employees Insurance Company (GEICO) and United States Automobile Association (USAA), were made parties to Anna Phelps' declaratory judgment proceeding. After the case was concluded in the trial court, Nationwide, GEICO, and USAA settled the passengers' claims and waived their subrogation rights against Anna Phelps. As a result, Featherstone, Trevey, Nationwide, GEICO, and USAA have not participated in this appeal, and the only issue remaining for decision is whether State Farm owes collision coverage for the damage to the car Anna Phelps was operating at the time of the accident.

Virginia. She removed all her possessions from her mother's home except a "box of junk" containing "[t]hings that [she] didn't want to throw away [but] didn't want to drag with [her]." She lived in a dormitory at the university during the first semester and with a friend in Alexandria during the second semester. Then, in the fall of 1988, she moved with her boyfriend into a townhouse at Springfield in Fairfax County. She signed a lease on the premises along with a third person who also occupied the townhouse.

Mary Catherine's grandmother loaned her the money to buy the car that was later involved in the accident of June 10, 1989. With her own funds, Mary Catherine procured liability insurance on the vehicle from Nationwide. She also changed the address on her operator's license to reflect her Northern Virginia location.

Anna left home in the summer of 1988 to attend High Point College in North Carolina, leaving behind "[n]othing important." After one semester at High Point, following her eighteenth birthday, Anna moved to Northern Virginia, transferred to George Mason University, and went to live with Mary Catherine in the Springfield townhouse. Although she did not plan to live "forever" with Mary Catherine, she never intended "to move back to [her mother's home]."

Anna acquired a car before she entered High Point College "with money that was in [a] trust" created by her paternal grandfather. Although the vehicle was originally titled in her mother's name, Anna changed the title to her name after she moved to Northern Virginia and also changed her operator's license to show her Northern Virginia address. On her own, she procured liability and collision coverage on the vehicle through an agent in Northern Virginia.

When Anna moved in with Mary Catherine, the two sisters signed a new lease on the townhouse. They divided the expenses for the rental of the house as well as the utilities, with assistance from other students who shared the living quarters from time to time, except that Mary Catherine's boyfriend offered little financial help during the time he lived with her.

Both young women worked full time as waitresses at local restaurants while attending George Mason University, and both had checking accounts in Northern Virginia banks. The trust fund created by their paternal grandfather paid their tuition and part of the rental expense of the townhouse. Other relatives also assisted; a cousin paid for their school books, and their grandmother gave them some furniture.

Mrs. Phelps did not assist Anna and Mary Catherine financially, except for a loan she made to Mary Catherine for a deposit on the townhouse. Although Mrs. Phelps had no control over the trust fund and put no money in it, she handled all the communications with the trustee concerning the benefits to be paid to Anna and Mary Catherine. She also received from George Mason University information concerning her daughters' grades.

After Anna and Mary Catherine left home, Mrs. Phelps arranged with an accountant for the preparation of their income tax returns. However, on her own returns for the years 1988 and 1989, prepared by the same accountant, Mrs. Phelps claimed Anna and Mary Catherine as dependents, listing them on the returns as living with her twelve months of the year. She explained on the witness stand that her accountant "said as long as [Anna and Mary Catherine] were students [she] could claim them."

As part of her employment with a food chain, Mrs. Phelps received health and medical insurance coverage that also provided protection for Anna and Mary Catherine as long as they remained students. This insurance covered the cost of treatment Anna received for an eye problem and for the injuries she suffered in the accident of June 10, 1989.

Mrs. Phelps objected, without effect, to Anna's transfer to George Mason University because she believed Anna should not make a change so early in her college career. Mrs. Phelps also objected, without avail, to Mary Catherine's living arrangement because she "didn't approve of the young man [Mary Catherine] had staying with her at the time." Although she let her daughters know how she felt about their behavior "[f]or a short time" following their departure from home, "[a]fter a while [she] didn't say anything because [she] knew they knew what [she] felt."

The two daughters continued to visit their mother, although not always at the same time. Anna went home "[m]aybe once a month . . . for a week end or holiday" and for two weeks at Christmas. Mary Catherine visited "about once every two months." On such occasions, the visiting daughter had to sleep on a sofa because the bedrooms previously occupied by Anna and Mary Catherine had been taken over by other family members. When at home, the two young women were expected to abide by "some general family rules," which, Mrs. Phelps testified, they "[s]ometimes" observed.

On the second weekend in June 1989, Anna and Mary Catherine returned to Goode to attend a wedding. On the evening of June 9,

Anna decided to take two friends, Anna Featherstone and Jennifer Trevey, to a party. Anna borrowed Mary Catherine's car because Anna's would seat only two persons. Upon leaving the party after midnight, Anna drove along a private driveway and struck a tree which had been placed in a planter in the middle of the road.

Anna stayed with her mother for about a month after the accident, recuperating from her injuries. She then returned to Northern Virginia and resumed her employment and schooling.

Approximately seven months after the accident, in January 1990, Mary Catherine dropped out of George Mason University and moved back to her mother's home. She obtained employment in Lynchburg, but remained at the family home until the following June, when she went to live with friends in Lynchburg. Later, she returned to Northern Virginia and enrolled at the Northern Virginia Community College. All the while, Anna remained in Northern Virginia.

As noted previously, State Farm based its denial of coverage upon the policy definition of the word "relative" as meaning "a relative of the named insured who is a resident of the same household." We considered the same or similar policy language in *State Farm Mutual v. Smith*, 206 Va. 280, 142 S.E.2d 562 (1965), *St. Paul Ins. v. Nationwide Ins.*, 209 Va. 18, 161 S.E.2d 694 (1968), *Allstate Insurance Co. v. Patterson*, 231 Va. 358, 344 S.E.2d 890 (1986), *Government Employees Ins. v. Allstate Insurance*, 235 Va. 542, 369 S.E.2d 181 (1988), and *Furrow v. State Farm Mutual Auto. Ins.*, 237 Va. 77, 375 S.E.2d 738 (1989).

In *Smith*, we said that the word "household"

connotes a settled status; a more settled or permanent status is indicated by "resident of the same household" than would be indicated by "resident of the same house or apartment".

*Smith*, 206 Va. at 285, 142 S.E.2d at 565-66. We stated further that the term "household"

"embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness'."

*Id.* at 285 n.6, 142 S.E.2d at 565-66 n.6 (quoting *Lumbermens Mut. Casualty Co. v. Pulsifer*, 41 F.Supp. 249, 251 (D. Me. 1941)). We also said that

> [s]ince "household" is usually taken to refer to a group of persons, rather than a building, it appears appropriate to interpret the term, resident of the same household, as meaning: resident of the same homestead and member of the same household.

206 Va. at 285 n.7, 142 S.E.2d at 566 n.7.

■ This is the first time, however, that we have considered the policy language in the context of a dispute involving college students. State Farm cites a number of cases from other jurisdictions in which the courts generally have held that a college student living away from home retains his or her status as a resident of the family household.

However, all the out-of-state cases cited by State Farm are distinguishable on their facts. Yet, one of the cases, *American States Ins. Co., Western Pac. Div. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971), is of more than passing interest because we cited it in *Patterson*. 231 Va. at 363, 344 S.E.2d at 893.

In *American States*, the Supreme Court of Utah said that "[r]esidence emphasizes membership in a group rather than an attachment to a building" and that "[o]rdinarily when a child is away from home attending school, he remains a member of the family household." *American States*, 26 Utah 2d at 164, 486 P.2d at 1044. The Utah court also said, however, that *"[i]t is a matter of intention and choice rather than one of geography." Id.* (emphasis added). And this Court said in *Patterson* that "a person's intent is important in determining whether he qualifies as a resident of a particular household." 231 Va. at 363, 344 S.E.2d at 893.

We proceed, therefore, to inquire into the intent of Anna and Mary Catherine with respect to membership in their mother's household. In making this inquiry, we bear in mind that Anna agreed in the trial court, and agrees here, that she had the burden of proof on the issue of household membership.[2] Since coverage would be barred only if Anna and Mary Catherine were both members of their mother's household at the time of the accident, Anna's burden

---

[2] Since there is no question on appeal concerning which party bore the burden of proof, we express no opinion on the subject.

required her to prove that either she or Mary Catherine was not such a member.

In determining the question of intent in this case, we start with what Anna and Mary Catherine were told by their mother — "when [you turn] eighteen [you are] on [your] own." The two apparently took their mother at her word. Indeed, when Anna was asked at trial whether, after moving to Northern Virginia, she "ever intend[ed] to move back to [her] Mom's," she replied, "[n]o." While Mary Catherine was not asked the same question, the actions of the two young women establish without doubt that they shared the same intent.

When Mary Catherine went away to college, she left only "a box of junk" at her mother's home, and when Anna departed, she left "[n]othing important" behind. After one semester in a college dormitory at George Mason University, Mary Catherine moved into a townhouse with her boyfriend, signing a one-year lease on the premises. When Anna moved to Northern Virginia and joined Mary Catherine at the townhouse, the two sisters signed a new lease together.

■ Further, both Anna and Mary Catherine were employed full time as waitresses at Northern Virginia establishments. Both had their own checking accounts in Northern Virginia banks. Both changed their operator's licenses to reflect their Northern Virginia address. Both obtained automobiles without their mother's assistance and on their own procured and paid for automobile insurance, Anna securing her policy through a Northern Virginia agent.[3] Both were independent of their mother not only for financial support but also for parental guidance — Anna ignored her mother's wishes about changing schools and Mary Catherine disregarded the objections about her live-in boyfriend.

State Farm argues, however, that certain actions of the mother and her two daughters "speak much more loudly than their words on the question whether Anna and Mary Catherine remained residents of their mother's household." Here, State Farm cites Mrs. Phelps' action in claiming the two daughters as dependents on her income tax returns after they left home, the fact that the income tax returns filed by Anna and Mary Catherine "listed their addresses as their mother's address," the circumstance that Anna stayed with her

---

[3] The record is silent on the location of the Nationwide agent who issued Mary Catherine's policy.

mother for a month after the accident of June 10, 1989, and the incident of Mary Catherine's return to the mother's home in January 1990, after she dropped out of George Mason University.

But the evidence relating to all these matters was either irrelevant or immaterial on the question of what may have been Anna's and Mary Catherine's intent on the date of the accident with respect to membership in their mother's household. Concerning the mother's income tax returns, there is nothing in the record to suggest that the two daughters, or either of them, had any knowledge of, or ever approved, Mrs. Phelps' action in listing them as dependents on her income tax returns.

In similar vein, the mere fact that the tax returns filed by Anna and Mary Catherine listed the mother's address as theirs is not entitled to persuasive weight. Neither sister was asked at trial to explain the use of the address, and the trial judge apparently did not consider the point of sufficient importance to even mention it in his letter opinion.

Pertinent to Anna's month-long sojourn with her mother after the accident, the observation may be made that this was a perfectly natural thing for Anna to do, whatever her attitude about membership in the family household. She was staying with her mother on the weekend the accident occurred, she was injured in the accident and was unable to work, and she was receiving treatment from a Lynchburg physician. Furthermore, she returned to Northern Virginia as soon as she was able to resume her employment.

Then, there is the point of Mary Catherine's return to her mother's home after she dropped out of George Mason University. This move was made, however, some seven months after occurrence of the accident in question, so it is too remote in time to be of probative value on the question of Mary Catherine's intent on the date of the accident. Moreover, the only evidence relating to what Mary Catherine's intent may have been in making the move is found in her statement that she returned to Goode "briefly during a transition period when [she] was trying to decide where [she] wanted to go" — a statement more supportive of an intent not to be a member of the mother's household than of an opposite purpose. And, once the "transition period" was over, Mary Catherine returned to Northern Virginia.

State Farm also expresses the concern that, if we reverse the judgment in this case, it would necessarily follow that "no child who has gone away to college or has entered the service could

remain a resident of his parent's household." We hasten to allay State Farm's concern. This is not a typical college student case, and our decision to reverse is confined to the particular facts involved.

■ We are not unmindful of the deference to which the finding of a trial court, sitting without a jury, is ordinarily entitled. And we do not overlook the fact that, in his letter opinion, the trial judge stated that "[w]hile the mother's and daughters' testimony generally favored the plaintiff's position, they have an interest in the outcome of this case and their credibility must be tested by their objectivity."

However, what we said in *Hankerson v. Moody*, 229 Va. 270, 329 S.E.2d 791 (1985), is applicable here:

> [A] trial court's conclusion based on evidence that is "not in material conflict" does not have . . . binding effect on appeal. *Durrette v. Durrette*, 223 Va. 328, 332, 288 S.E.2d 432, 434 (1982); *Clark v. Clark*, 209 Va. 390, 395, 164 S.E.2d 685, 689 (1968). The trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it "may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." *Cheatham v. Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984).

229 Va. at 274, 329 S.E.2d at 794. *See also Schweider v. Schweider*, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992); *Sturgis v. Stinson*, 241 Va. 531, 536, 404 S.E.2d 56, 59 (1991).

■ Mrs. Phelps, Anna, and Mary Catherine were the only witnesses in this case. Their testimony was completely free of material conflict, and it was not contradicted, inherently incredible, or inconsistent with any fact of record.

Accordingly, we will reverse the judgment of the trial court and enter final judgment here declaring that Anna Phelps is entitled to collision coverage under her policy with State Farm for the automobile accident of June 10, 1989.

*Reversed and final judgment.*