## CIRCUIT COURT OF THE CITY OF RICHMOND

Brenda A. Lipscomb

v.

GEICO et al.

September 10, 1997

Case No. HH-374-3

BY JUDGE T. J. MARKOW

This letter concerns the Petition for Declaratory Judgment filed to determine the rights and obligations of the parties to this controversy. The court has heard the evidence and has considered the various arguments made by the parties and renders the following decision.

On Friday, January 26, 1996, the plaintiff, Brenda A. Lipscomb, was involved in a head-on automobile collision in the City of Blackstone with a vehicle driven by the defendant, William H. Odom, Jr., and owned by the defendant, Earl M. Trivette. Amanda B. Trivette, daughter of Earl Trivette, was a passenger in the automobile driven by Odom.

This automobile, although owned by Earl Trivette, was for the general use of Amanda Trivette and insured by the defendant GEICO Insurance Company. Insurance coverage to the family members of the defendant Odom, Mr. and Mrs. John T. Knapp (Odom's grandparents) and Pamela Knapp

(Odom's mother), was provided by Allstate Insurance Company. The plaintiff's uninsured motorist coverage was provided by Integon/New South Insurance Company.

Odom and Amanda Trivette had been dating for over one year prior to the date of the accident. Amanda resided with her parents in Blackstone; Odom resided with his grandparents in Crewe.

At the time of the accident, Odom's mother, Pamela Knapp, was temporarily residing in a travel trailer which was located on the same property as the home of her parents, Mr. and Mrs. John Knapp. Odom had resided with his grandparents since approximately 1975; they were his legal guardians. Pamela Knapp moved onto the property in September 1995 in order to "get her feet on the ground" and pursue a college education. She remained in the trailer until approximately November 1996. The trailer was located between 100 and 150 yards from the main Knapp house; it did not have running water, sewage service, a telephone, or a separate post office box. Electricity was provided via a hook-up to the Knapp's house. Pamela Knapp and her young son, C.J., used the toilet and shower facilities in the house. They also took most of their meals in the house. Pamela Knapp only intended a temporary stay in Crewe until her finances were in order. When possible, she paid John Knapp rent of $100 per month. Except for sanitary facilities and family meals, the two residences were maintained as separate entities. Pamela Knapp also owned a pickup truck, which was insured by Allstate.

Depending on the week, Odom spent between two and five nights per week at the Trivette home. He shared Amanda's room and was occasionally chaperoned by her mother, Sadie Trivette. Both teens had automobiles at their disposal. Odom drove a Nissan pickup truck owned by his grandparents, Mr. and Mrs. John Knapp, and insured by Allstate. Amanda Trivette drove a Pontiac Grand Am automobile owned by her father, Earl Trivette, and insured by GEICO.

Amanda Trivette was repeatedly told by her parents that no one else was permitted to drive the car. This prohibition was occasionally (but not always) reiterated after Earl or Sadie Trivette observed Odom driving the Pontiac. The Trivettes did not specifically invoke the prohibition with regard to Odom, nor did they ever speak directly to Odom and forbid his use of the Pontiac. The Trivettes were aware of repeated instances of use, and Odom testified that he never made an effort to "hide" his use of the car. In fact, Odom was frequently seen by the Trivettes parking the Pontiac in front of the family's home or driving their daughter to a nearby convenience store. Although Odom admits that he overheard the Trivettes' admonishments to their daughter and assumed

that they applied to his use of Amanda's car, he drove the Pontiac whenever she asked him to do so.

Once again, neither Mr. nor Mrs. Trivette ever told Odom that he was barred from driving this automobile. Due to discomfort with her eyeglasses, Amanda Trivette expressly requested that Odom drive at night, during rainstorms, when it was foggy, or when applying cosmetics on the way to school. On the Friday morning in question, Amanda requested Odom's assistance in order that she be able to study for a test while the two teens drove to their high school.

The parties are seeking a declaratory judgment in order to determine whether the defendant Odom is entitled to insurance coverage, and if so, which party is required to satisfy this claim.

There are three issues at stake here. First, whether Odom is Pamela Knapp's resident relative, such that her insurance policy will cover Odom's liability arising from this accident. Second, whether Odom is a resident relative of Mr. and Mrs. John Knapp, such that their insurance policy will cover Odom's liability arising from this accident. Resolution of these first two issues turns on the definition of "resident relative" and the "reasonableness" of Odom's belief that he had permission to use the Pontiac automobile. Finally, the third issue is whether Odom was engaged in the "permissive use" of the car owned by Earl Trivette at the time of this incident so as to enjoy coverage under the GEICO policy issued on that automobile.

The relevant statute is Va. Code § 38.2-2204(A) (the "omnibus clause"). There are two components of this statute, the first of which covers automobiles "owned" by the insured. Coverage for "owned" automobiles includes the owner himself and extends to persons using this motor vehicle with the express or implied consent of the owner/named insured. Here, the "owned" vehicle is the Pontiac; the "owner" and named insured on the GEICO policy is Earl Trivette. The issue is whether Odom was engaged in "permissive use" of Earl Trivette's Pontiac.

The second component of this statute addresses coverage of "non-owned" automobiles (i.e., not owned by the insured party) that are used by the insured party himself or his resident relatives. Coverage for the use of "non-owned" automobiles extends to motor vehicles used by the insured party or his relatives with the consent of the third-party owner or *custodian*. Here, the "insured parties" are Pamela Knapp and John Knapp (each has a separate Allstate policy); the "non-owned" vehicle is the Pontiac; the third-party "owner" is Earl Trivette, and the "custodian" is Amanda Trivette.

For purposes of the omnibus clause of § 38.2-2204(A), a custodian's consent is only sufficient when seeking to determine whether permission was

granted for use of a "non-owned" vehicle. Users of a vehicle "owned" by the insured *must* obtain the express or implied permission of the owner; the custodian's consent will not suffice in this context.

The "owned" vehicle component of the omnibus clause is relevant to deciding the first and second issues (the "resident relative" question). It is undisputed by the parties that Odom is a resident relative of Mr. and Mrs. John Knapp, i.e., the three individuals are residents of the same household. A household is generally defined as "a collection of persons living together as a single group with one head under one roof, a unit of permanent and domestic character." *Furrow v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 77, 80 (1989) (citations omitted). An individual's subjective intent is also determinative of "resident" status. *Allstate Ins. Co. v. Patterson*, 231 Va. 358, 363 (1986).

In this case, Mr. and Mrs. Knapp obtained legal custody of Odom at an early age, raising him as their own child and providing a room in the family house for his use. The Knapps and Odom share the same home address, telephone, and living quarters. These three individuals each testified as to the permanence of this domestic unit. In particular, Odom clearly intends to include himself as a member of this household and should be considered a "resident relative" of his grandparents, the Knapps.

Odom was provided with a Nissan pickup truck for his personal use. This truck is owned by the Knapps and insured by Allstate. A provision in this insurance policy states that a relative (Odom) of the insured (the Knapps) is also covered while driving a "non-owned" vehicle (the Pontiac) if that relative (Odom) operates a non-owned vehicle with the permission of the actual owner (Earl Trivette), *or* if the operator "reasonably believes" that he has the owner's permission. In *Gordon v. Liberty Mut. Ins. Co.*, 675 F. Supp. 321 (E.D. Va. 1987), the court held that such insurance policy provisions are to be construed in accordance with Va. Code § 38.2-2204(A), which recognizes consent granted by either the custodian or the owner of the "non-owned" vehicle. In other words, the permission requirement for non-owned vehicles will be satisfied if Odom reasonably believed that he had the permission of the non-owned vehicle's custodian, Amanda Trivette. The "custodian" of an automobile is any person who has possession of such vehicle and is charged with safeguarding it from damage. Here, Amanda Trivette was given exclusive use of the Pontiac by her father. Although Earl Trivette owned and insured this vehicle, Amanda's actual possession of the Pontiac leads to an inference that she was also charged with the care and upkeep of the car.

As detailed above, Odom did not have the express permission of Earl Trivette to use this non-owned vehicle (the Pontiac). However, Odom could have "reasonably believed" that the custodian's (Amanda Trivette) frequent,

explicit requests that he drive her Pontiac was sufficient to constitute her "permission." As such, the Knapps insurance coverage with Allstate extends to Odom's use of this non-owned vehicle.

In response to the second issue, Odom was not a resident relative of the same household as Pamela Knapp. At the time of this incident, Pamela was residing temporarily in a trailer located on the property of her parents. She cared for her young son, C.J., in the trailer which was located a considerable distance from the main house. Pamela was neither living under the same roof as her elder son, Odom, nor was there any permanence or domestic character to this arrangement. Pamela intended to remain in this residence only for so long as it took to "get back on her feet." Although Pamela Knapp's Allstate insurance policy contains the standard Virginia "non-owned" vehicle coverage for resident relatives, Odom cannot be considered a resident relative of Pamela Knapp's household. In sum, there are two separate and distinct households in operation here, one containing Odom and Mr. and Mrs. John Knapp and another consisting of Pamela Knapp and her younger son C.J. This bifurcation precludes the plaintiff from invoking the "resident relative" provision of Pamela's insurance policy in order to extend coverage to Odom's alleged negligence.

The third and final issue concerns whether Odom was operating Amanda Trivette's automobile with the permission of the "owner," Earl Trivette. Odom did not have Earl Trivette's express permission to operate his daughter's Pontiac. However, implied permission may arise "from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action." *Hinton v. Indemnity Ins. Co. of North America*, 175 Va. 205, 214 (1940).

In this case, Earl Trivette's failure to directly prohibit Odom's use of the car, combined with Amanda Trivette's repeated requests for him to drive, resulted in a situation of implied consent. At the time of the accident, Odom was spending a great deal of time at the Trivette home, clearly establishing a "relationship" between the teen and his girlfriend's family. The Trivettes never spoke to Odom directly to forbid his use of their daughter's car. Despite repeatedly witnessing his operation of the Pontiac, Mr. and Mrs. Trivette still refrained from confronting Odom. This established a "course of conduct" characterized by the Trivettes' silent tolerance of Odom's actions. Although Odom had overheard their admonishments to Amanda that she was the only one authorized to drive the car, Odom continued to drive the car when asked by his girlfriend. Despite his awareness of the Trivettes' general policy of restricted use, their prohibition was effectively revoked by a lack of direct

objection to his driving and Amanda Trivette's repeated grants of permission. In other words, Odom was operating the Pontiac with the implied permission of its owner, Earl Trivette. This is sufficient to invoke the omnibus provision of Earl's automotive insurance policy with GEICO, such that the company is obligated to provide coverage to Odom.

In conclusion, this Court finds coverage under both the Allstate and the GEICO policies. Allstate's coverage is invoked pursuant to the "resident relative" provision in the policy held by their insured, Mr. and Mrs. John T. Knapp. As Odom is not Pamela Knapp's "resident relative," her Allstate insurance policy is not implicated here.