## CIRCUIT COURT OF THE CITY OF ROANOKE

Kevin Graham et al.

v.

Eric Wilson et al.

August 29, 2002

Case No. CL 98-605

BY JUDGE CHARLES N. DORSEY

This declaratory judgment matter comes on upon stipulation of fact and designation of issues, plus introduction of additional evidence at trial and submission of written argument and authority. The stipulation of fact contained in the file states the essentials of the factual background, and it needs no repeating. A transcript of the testimony at the trial has been filed as have depositions of Kevin Thomas Graham, Steven Haugh, and Eric Wilson. While there are some minor differences between the stipulation of fact and the evidence introduced, the essential facts are not in issue and the parties differ only on the inferences and legal conclusions to be drawn from this state of facts.

The designated issues will be addressed separately.

The first designated issue is, as to Nationwide Insurance Company, whether Kevin Graham, who is in the United States Marine Corps, stationed in Norfolk, Virginia, was a "resident of the household" of his parents, Tom and Linda Graham, at the time of the accident, for purposes of UIM coverage in the Nationwide policy.

In the seminal case of *State Farm Mutual v. Smith*, 206 Va. 280 (1965), the Supreme Court of Virginia stated, in pertinent part, that, "The meaning of 'resident' or 'residence', a prolific source of litigation, depends upon the context in which it is used . . . a more settled or permanent status is indicated

by 'resident of the same household' than would be indicated by 'resident of the same house or apartment'."

The Supreme Court of Virginia, quoting with approval the Supreme Court of Utah, later stated that "ordinarily when a child is away from home attending school, he remains a member of the family household." *Phelps v. State.Farm Mutual*, 245 Va. 1 (1993) *quoting American States Ins. Co., Western Pac. Div. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971). Although the *Phelps* court went on to find that the two college students, who were siblings, were not "residents" of their mother's household, that conclusion is not pertinent in this case. The *Phelps* court largely relied on the statement of the mother and the two daughters that, when the daughters attained age eighteen they were told "[you are] on [your] own." One sister also testified that she did not ever intend to move back to her mother's house and the Supreme Court of Virginia found that the actions of both sisters established "without doubt" that they both shared that intent. More to the point in the present matter, the *Phelps* court, went on to say that *Phelps* does not stand for the proposition that "no child who has gone away to college or has entered the service could remain a resident of his parents' household." The *Phelps* court specifically stated that *Phelps* was "not a typical college student case," and the decision to reverse was confined to the particular facts.

All parties have cited the case of *Allstate Ins. Co. v. Patterson*, 231 Va. 358 (1986), though they obviously differ in their interpretation of that case. In *Patterson*, there are many facts similar to the facts here, including, the parents' address was used on the driver's license, the parents' address was used with the bank, the parents' address was used at the emergency room, and most personal belongings were maintained in home of the parents. However, the son in *Patterson* was twenty-six years old at the time of the accident, had been married and divorced, had moved out of and back into his parents' home at least twice, and had become a member and officer of a motorcycle club staying in various clubhouses for a while and then moving in with his girlfriend out of town. In finding that the son was not a resident of the father's household, the *Patterson* court focused on the "casual, erratic nature" of his contacts with the father's household, including the fact that, by his own estimate, he spent only about 10% of his time at the home of his parents in the three years preceding the accident and that he led an existence which the court described as "nomadic." Counsel for National Grange, in the present case, argues that joining a motorcycle gang, as in *Patterson*, is analogous to joining the military. Counsel for Nationwide similarly urges that Kevin Graham, as an "active member in the United States military, simply was not a member of his parents' household. . . ." The analysis is not concluded that quickly.

In *Saint Paul Ins. v. Nationwide Ins.*, 209 Va. 18 (1968), the Supreme Court of Virginia addressed the issue of residency pertaining to whether a son who had entered the United States Army was a resident of his father's household. In finding that he was not, the Court focused on the undisputed evidence that the parents separated and were granted a divorce while the son was in the military service. The son repeatedly spoke of living with his mother following the separation and also made his home with his mother following the separation.

If the status of being in the military necessarily mandated a finding that military personnel, without more, are no longer residents of their parents' household, there would be no need for the discussion in Saint Paul. As urged by the plaintiff in his memorandum of law, the issue of whether the serviceman in *Saint Paul* lived with his father or his mother would not even have been addressed, if military status alone were dispositive of the issue.

In this case, as stipulated, Kevin Graham was nineteen years of age at the time of the accident and though the stipulation states that he enlisted in the Marine Corps in October 1995, his testimony at the time of trial was that he enlisted in April 1995, at age seventeen. In either event, prior to enlistment, he had always lived with his parents and had specifically lived at the 3325 Courtland Road address since 1992. All of his liberty weekends off from the Marines were spent at his parents' home at the Courtland Road address; all of his personal belongings including clothes, shoes, stereo, television, VCR, and other belongings were left at his parents' home and maintained there; the Courtland Road address was used on his tax returns with refunds being forwarded to the same address; and the Courtland Road address was used on his driver's license, bank account, and military medical insurance forms. Unlike the factual patterns in *Phelps, Patterson*, and *Saint Paul*, Kevin Graham's parents remained married; he established no separate residence or lifestyle; and his parents did not force him into an independent existence. By all accounts, he remained an integral part of the household and never intended to change his residence.

These facts are not in material conflict and the Court "may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." *Cheatham v. Gregory*, 227 Va. 1 (1984).

Consequently, I find that Kevin Graham was a resident of the household of his parents at the time of the accident for purposes of UIM coverage in the Nationwide policy.

The second designated issue is, as to Nationwide Insurance Company, whether Kevin Graham was injured "arising out of the use of" Eric Wilson's vehicle.

Counsel for Nationwide and for Graham cite *State Farm Mutual v. Powell*, 227 Va. 492 (1984), for the proposition that:

> Consideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded. In addition, the "ownership, maintenance, or use" provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning. Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle. Furthermore, consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its "use."

*Id.* at 500-01 (citations omitted).

By both the testimony of Eric Wilson (transcript of May 26, 2000, deposition, p. 21) and the testimony of Kevin Graham (transcript of July 2, 2002, hearing, pp. 38-39), Eric Wilson, the driver, was still in the motor vehicle at the time of the injury to Kevin Graham. Additionally, there is no conflict in the evidence that the light pole at issue fell only after being struck by Eric Wilson's vehicle. Nor is there any conflict in the evidence that the greater part of Kevin Graham's injuries were caused by being struck by the light pole after it was subsequently hit by the Haugh vehicle.

Counsel for Nationwide attributes great weight to the fact that Kevin Graham was not in the Wilson vehicle at the time of being struck by the light pole. In *Nationwide Mutual Ins. Co. v. Smelser*, 264 Va. 109 (2002), the Supreme Court of Virginia distinguished a prior case which held that a shooting from within a vehicle did not constitute "use," from the case before the court which involved wresting a handbag from a pedestrian. The *Smelser* court held that the movement of the assailant's vehicle and its resulting force were used to help wrest the handbag from the victim. The Court went on to hold that the victim's injuries were causally related to the employment of the

uninsured vehicle as a vehicle because "the force from the vehicle's movement directly contributed to her injuries."

In *State Farm Mutual v. Rice*, 239 Va. 646 (1990), the Supreme Court of Virginia found that an accidental shooting, during a hunting trip, when both the driver and passenger had alighted from the vehicle, constituted the requisite cause or relationship between the accident and the vehicle. Significantly, as in the *Smelser* case, the injured party no longer occupied the vehicle and the driver, while also outside the vehicle, had not "completed his use" of the vehicle since he was in the process of placing a thermos in the vehicle while removing his loaded rifle from it. Similarly, Eric Wilson, though apparently unconscious, had not completed his use of his motor vehicle at the time Kevin Graham was struck by the light pole, which striking occurred because the force from Eric Wilson's vehicle's movement directly contributed to Kevin Graham's injuries.

The Court also notes that, while the language in the instant case is neither ambiguous nor unclear and rules of construction are not necessary, were the situation otherwise, it is the clear rule in the Commonwealth that language should be construed in favor of the insured so as to grant coverage. *Cuna Mutual Ins. Soc. v. Norman*, 237 Va. 33 (1989), and *American Reliance Ins. Co. v. Mitchell*, 238 Va. 543 (1989).

Consequently, without addressing any issues of proximate causation which may arise at the trial of the underlying action, I find that Kevin Graham was injured "arising out of the use of" Eric Wilson's vehicle.

The third designated issue is, as to National Grange Insurance Company, whether Part A. B3 under "exclusions" of the National Grange policy applies to exclude coverage.

It is well established that "when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather they give the language its plain and ordinary meaning and enforce the policy as written." *The Partnership Umbrella, Inc. v. Federal Ins. Co.*, 260 Va. 123 (2000). Similarly, when the language is clear and is not in conflict with any statutes, it must be enforced. *Stone v. Liberty Mutual Ins. Co.*, 253 Va. 12 (1996); *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153 (1993).

There has been no argument made by any party, nor any evidence introduced, that the exclusionary language in the National Grange policy is violative of, or in conflict with, any statute.

Consequently, Part A. B3 under "exclusions" of the National Grange policy applies to exclude coverage in this matter to Eric Wilson.

The Court's finding as to the exclusionary language of the National Grange policy being dispositive of the issue of coverage on that policy, the Court declines to address the remaining designated issue.